IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID O'DONNELL, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-1922-L |
| | § | |
| JUAN PABLO ZAVALA DIAZ, | § | |
| AVISBUDGET CAR RENTAL, LLC, | § | |
| et al | § | |
| | § | |
| Defendants | § | |

MOTION FOR DEFAULT JUDGMENT

Plaintiff David O'Donnell re-urges his motion for default judgment against Defendant Juan Pablo Zavala Diaz[1] pursuant to FED. R. CIV. P. 55(b)(2), and would show this Court as follows:

**Background**

On November 7, 2016, Plaintiff sued Defendant Juan Pablo Zavala Diaz in Dallas County, Texas, for damages resulting from a car wreck caused by Defendant Zavala. Doc. No. 57-1 at 4-48. Zavala is a foreign national, and Plaintiff set about obtaining service of process. Plaintiff's efforts to obtain service on Zavala are well known to this Court. Magistrate Judge Toliver granted Plaintiff's motion for substituted service on June 18, 2019. Doc. No. 82. Plaintiff obtained the return of substituted service on June 19, 2019. Doc. No. 83.

Magistrate Judge Toliver also terminated as premature Plaintiff's second motion for default judgment (Doc. No. 63) but without prejudice to its being re-urged following the execution of

---

[1] Throughout this litigation, Plaintiff and Defendant Avis have used different versions of Defendant Zavala Diaz's last name. Plaintiff prefers to refer to Defendant as Zavala, which is presumably his paternal surname under Spanish naming customs. Defendant Avis has tended to refer to Zavala as "Diaz," which is presumably his maternal surname. There is no dispute that Plaintiff and Avis are referring to the same individual, even if they are not using the same appellation.

substituted service and the expiration of Diaz's time to file a responsive pleading. Doc. No. 82 at 4-5. Plaintiff served Diaz on June 19, 2019 with a summons and the complaint. Doc. No. 83. The summons specified that Diaz had 21 days to file an answer, in accordance with FED. R. CIV. P. 12(a)(1)(A)(i). Doc. No. 83. Diaz has not responded as of August 22, 2019. Accordingly, Plaintiff now requests a default judgment in his favor and against Defendant Zavala.

## Exhibits

O'Donnell relies herein on the following exhibits, of which true and correct copies are attached and made part of the record as if copied in their entirety.

Exhibit "A"- Texas Peace Officer's Crash Report;

Exhibit "B"- Medical Records and Billing Affidavits, as follows:

| Exhibit B Tab | Name of Provider | Date of Service | Incurred Amount | Record and Billing Affiant |
|---|---|---|---|---|
| Exh. B-1 | City of Addison | 1/15/2015 | $570.00 | Theresa J. Walker |
| Exh. B-2 | Robert Gant, PhD Institute for Clinical Neuroscience | 5/31/2016 | $2,000 | Zachary Heath |
| Exh. B-3 | Pedro Nosnik, MD | 1/14/2015 – 5/11/2016 | $10,526 | Taylor Nguyen |
| Exh. B-4 | Ramsey A. Stone, MD | 1/26/2015-7/27/2015 | $445 | Robin Williams |
| Exh. B-5 | Frisco Spine Clinic Michael Turner, MD | 3/6/2015 – 3/7/2015 | $1197.00 | Jason Chapman |
| Exh. B-6 | Gateway Diagnostic Imaging | 2/16/2015-4/2/2015 | $700 | Phyllis Kilgore |
| Exh. B-7 | Lewisville Urgent Care Dr. Koppell | 9/18/2015-9/22/2015 | $219 | Cassee Land |
| Exh. B-8 | MD Pathology | 1/15/2015 | $68.60 | Cheyanne Shields |
| Exh. B-9 | Preferred Imaging | 5/13/2015 | $4,740 | Tara Monroe-Garcia |
| Exh. B-10 | Source One Rehab (Village Physical Therapy) | 5/20/2015-4/28/2016 | $21,200.00 | Jason Chapman |
| Exh. B-11 | Southwest Pulmonary Associates | 1/15/2015-1/16/2015 | Note: client was not seen in clinic – Seen at Texas Health Resources | See Texas Health Resources Plano |
| Exh. B-12 | Texas Health Plano | 1/15/2015-1/16/2015 | $19,735 | Lyndia Conley White |

| Exh. B-13 | Texas Medicine Resources | 1/15/2015 | $3,798 | Steven B. Winkler |
|---|---|---|---|---|
| Exh. B-14 | Texas Radiology Associates LLP P.O Box 2285 Indianapolis, IN 46206 | 1/15/2015-1/16/2015 | $726 | Terrie Shldon |

Exhibit "C" – Life Care Plan;

Exhibit "D"- Affidavit of Plaintiff David O'Donnell

Exhibit "E" – Affidavit of Tisa Eubank

Exhibit "F" – Unsworn Declaration of Plaintiff David O'Donnell (on lost wages)

### Argument and Authorities

**I.    Plaintiff's Complaint Provides a Sufficient Basis for Judgment against Zavala**

As this Court knows, a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill." *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Thomson v. Wooster*, 1884, 114 U.S. 104 at 113, 5 S. Ct. 788 at 792, 29 L. Ed. 105 at 108).

**A.    Plaintiff pleaded sufficient facts to support default judgment against Zavala**

The statements of the bill, or facts assumed to be true, include these:

- That Zavala smashed the vehicle he was operating into the vehicle in which Plaintiff was a passenger at a high rate of speed (Doc. No. 13 at 2)
- That Zavala failed to keep a proper lookout (Doc. No. 13 at 2)
- That Zavala failed to yield the right of way to oncoming traffic (Doc. No. 13 at 2)
- That Zavala made an unsafe left turn (Doc. No. 13 at 2)
- That Zavala failed to timely apply his brakes (Doc. No. 13 at 2)

The official Texas Peace Officer's Crash Report previously filed with this Court supports Plaintiff's factual allegations against Zavala. Exhibit A; Doc. No. 57-1 at 59-63. Thus, this Court may confidently accept Plaintiff's factual allegations as true.

### B.     The facts support Plaintiff's negligence claims against Zavala

Plaintiff's facts alleged in his complaint support Plaintiff's claims for negligence against Zavala. Doc. No. 13 at 2. Under Texas law, a negligence cause of action has three elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). The unchallenged facts support Plaintiff's negligence cause of action.

#### 1.     Zavala owed Plaintiff a duty of care

Plaintiff and Zavala had no prior relationship that imposed a legal duty, but under Texas law, duty is the function of several interrelated factors, the foremost and dominant consideration being foreseeability of the risk. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). There is a general duty to exercise reasonable care to avoid foreseeable injury to others. *Id.* It is foreseeable that failure to yield the right of way while operating a motor vehicle can cause injury to others. Zavala owed Plaintiff a duty of care to operate his vehicle safely. Plaintiff asks this Court for a default judgment against Zavala.

#### 2.     Zavala breached his duty of care

Accepting the facts that Plaintiff alleged as true, Zavala smashed the vehicle he was driving into the vehicle Plaintiff was riding in. Zavala failed to keep a proper lookout for oncoming traffic. Zavala failed to yield the right of way to oncoming traffic. Zavala made an unsafe left turn. Zavala failed to timely apply his brakes to avoid smashing into the vehicle Plaintiff was riding in. The crash report explicitly confirms that Zavala smashed into Plaintiff's vehicle, that he failed to keep

a proper lookout (because his view of oncoming traffic was obstructed by another vehicle not involved in the wreck), that he failed to yield the right of way. Exhibit A; Doc. No. 57-1 at 61. Implicit in the crash report is that Zavala's left turn was unsafe, and that Zavala failed to timely apply his brakes to avoid the crash. *Id.*

The facts support Plaintiff's claim that Zavala breached his duty of care. Plaintiff asks this Court for default judgment against Zavala.

### 3. Zavala's breach of his duty of care proximately caused damages to Plaintiff

As this Court knows, proximate cause includes cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury and without which the injury would not have occurred. *Id.* In this case, Zavala's negligent act—failing to yield the right of way—was a substantial factor in bringing about the wreck and Plaintiff's injuries. Exhibit A; Doc. No. 57-1 at 61. The test for foreseeability, the other aspect of proximate cause, is whether a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Doe*, 907 S.W.2d at 478. The danger of injury is foreseeable if its "general character ... might reasonably have been anticipated." *Id.* Zavala cannot credibly argue that a person of ordinary intelligence should not have anticipated the danger of injury from failure to keep a proper lookout and yield the right of way while operating a motor vehicle on city streets.[2]

Zavala's breach proximately caused Plaintiff's injuries. Plaintiff asks this Court to render default judgment against Zavala.

---

[2] As Defendant Avis Budget has repeatedly sought to represent Zavala's interests without any apparent authority to do so, Plaintiff would point out that Avis Budget cannot credibly make that claim, either.

## II. Plaintiff's Documented Injuries

Plaintiff was severely injured in the crash and was transported by ambulance to the hospital. Exhibit A; Doc. No. 57-1 at 61. Plaintiff filed medical and billing affidavits in the state court action, and hereby submits the medical and billing affidavits in this Court to reflect the updated damages. Exhibit B. Plaintiff also submits a life care plan prepared by Dr. Jason Marchetti. Exhibit C.

Traditionally, damages are not awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Plaintiff filed detailed medical and billing affidavits in the state court action, and he files those affidavits with this motion as well. Exhibit B. Plaintiff is also submitting a life care plan prepared by Dr. Jason Marchetti. Exhibit C. Plaintiff is submitting his own affidavit reflecting his inability to live his life in the manner he was able to live and enjoy life before the wreck. Exhibit D. Finally, Plaintiff is submitting his wife's affidavit reflecting Plaintiff's changed personality, inability to enjoy life, inability to remember things and enjoy the marital relationship. Exhibit E.

### A. An Overview of O'Donnell's Physical and Psychological Damages

Unquestionably, O'Donnell suffered a serious and life-changing brain injury from which he will never fully recover. Although the best evidence of O'Donnell's injury is found in the voluminous medical and billing records attached as exhibits hereto, Plaintiff will attempt to summarize portions of the medical records and timeline of O'Donnell's injury for the convenience of the Court.

1. **Injuries on the Date of the Accident**

O'Donnell was transported by ambulance from the scene of the accident to Texas Health Plano around 1:30 PM, where he was triaged by Charles Holland, M.D., and found to have been a restrained back seat passenger in a vehicle traveling at 40 MPH and T-boned by the Zavalla vehicle. He reported hitting his head on the window, and presented with a significant left periorbital (around the eye) laceration. The laceration spared his eyeball but was 5 cm to the left eyebrow extending into the eyelid an a "v-shape." A CT scan showed a "subdural hematoma" (blood clot) overlying the frontal lobe of the brain measuring 1.5 cm in thickness, and "extensive soft tissue swelling/scalp hematoma overlying the frontal bone which extends to the left periorbital region." Upon consultation with the on-call neurolosurgeon, Michael Scott Turner, MD, O'Donnell was admitted to ICU, where Tamara Eskue, MD (in consult with Neurologist Dr. Turner) noted O'Donnell experiencing significant neck and back pain which diagnosed as severe whiplash, together with a large area of swelling and bruising to the left frontal skull bone down to the periorbital area.

2. **Neurological and Neuropsychological Follow-Up**

Upon release from the hospital, O'Donnell began treatment follow-up with neurologist Turner, presenting with headache, neck pain with right shoulder radiation from the severe impact with the side window, nausea and vomiting, both eyes swollen and problems with short term memory. He was noted to have sustained a concussion. In subsequent visits to Turner, O'Donnell reported musculoskeletal pain bilaterally, frequent headache, insomnia, confusion and dizziness. An MRI performed at Gateway Diagnostic Imaging on February 16, 2015 showed continued swelling and an "evolving" hematoma in O'Donnell's head. On Post-MRI follow-up, O'Donnell

was reporting continued dizziness and confusion, continued neck and shoulder pain and episodes of crying. Concussion was noted on all of O'Donnell's follow-ups.

On May 4, 2015, O'Donnell began treatment with neurologist Pedro Nosnik, MD, and presented with problems thinking of certain words, decreased work performance leading to a demotion, decreased memory and concentration, intermittent dizziness and lightheadedness, headaches, blurred vision, irritability and cervical neck pain. These are classic symptoms of a traumatic brain injury, or "TBI." *See* www.traumaticbraininjury.com/mild-tbi-symptoms.

At the referral of Dr. Nosnik, O'Donnell underwent an electronystagmogram ("ENG") and began to see neuropsychiatrist Bob Gant, PhD at the Institute for Clinical Neurosciences. The May 14, 2015 ENG reported as "highly suggestive of vestibular pathology (a TBI problem affecting the inner ear.)" Dr. Gant's treatment and conclusions are discussed below.

ON June 11, 2015, O'Donnell underwent a Physical Performance Examination at Source One Rehabilitation, where he exhibited cervical range of motion deficits and his rating on the neck disability index was a "mild disability" in his cervical region. O'Donnell was noted as a good candidate for a brain injury program.

Between June 16 and October 15, 2015, O'Donnell was seen in an out-patient brain injury program on a limited basis, because he was still attempting to work full-time. At the conclusion of the program, O'Donnell still failed all but one of the cognitive tests.

### 3. Current Status- Maximum Medical Improvement and Poor Prognosis

Neuropsychological records from Institute for Clinical Neurosciences show that as of June 27, 2016 O'Donnell was continuing to report hearing loss, balance and coordination issues, headaches, dizziness, forgetfulness, memory concerns, slowed thinking, distractibility irritability, attention/concentration issues, and poor frustration tolerance. Dr. Gant reported that O'Donnell

was continuing to suffer from significant neurobehavioral and neurophysiological problems, with moderately severe evidence of cerebral impairment including neuronal dysregulation. In summary, Gant concluded O'Donnell "sustained a brain injury as a result of [the accident] ... and it is my opinion that he has clinically plateaued' and within reasonable clinical probability has reached maximum medical improvement." Gant called O'Donnell's prognosis "poor, and his further recovery will be limited." Thus, as of June 2016, *O'Donnell will never get any better*.

Gant concluded that, if evaluated by the AMA *Guides to the Evaluation of Permanent Impairment*, 4th Ed., O'Donnell would have a 60% whole body impairment rating. The American Medical Association's *Guides to the Evaluation of Permanent Impairment*(AMA's *Guides*), 5th Edition, defines impairment as "a loss, loss of use or derangement of any body part, organ system or organ function." Furthermore, "Impairment percentages or ratings developed by medical specialists are consensus-derived estimates that reflect the severity of the medical condition and the degree to which the impairment decreases an individual's ability to perform common **Activities of Daily Living (ADL)**, *excluding work.*" (Emphasis in original) According to Gant, "O'Donnell is getting worse over time and within reasonable clinical probability is unlikely to improve… and it is within reason to suggest that, *in his condition, he is incapable of competitive employment* for the rest of his natural days in any capacity…. His ability to function independently (ADLs) is progressively deteriorating," and "his future needs will include the need for medical care and supervision and custodial care as his condition progressively worsens. At some point, within reason, I project he *may require placement in a nursing home* or assisted living facility."

### B. David O'Donnell's Past Reasonable and Necessary Medical Billing

The past medical records contained in Exhibits B, 1-14, show that Mr. O'Donnell has incurred $65,924.60 for reasonable and necessary healthcare in the past that was proximately caused by the accident.

### C. Life Care Plan for Future Reasonable and Necessary Medical Billing

Jason Marchetti prepared a life-care plan in this case, which is Exhibit C. Plaintiff's expert, relying on conclusions from Drs. Nosnik and Gant, has concluded that in reasonable probability, O'Donnell will need healthcare related to this accident for the rest of his life. Marchetti concluded that the reasonable and necessary cost of such future healthcare would be no less than $261.950.00. Further, also in Exhibit C is a letter from Jacob Gonzalez, Vie President of Physician Life Care Planning, indicating that the present value of these future medical requirements would add an additional $27,797.39.

### D. O'Donnell's Past Lost Wages

On the day of the accident, O'Donnell was making four thousand dollars ($4000.00) per month working for eTail Closeouts, and according to his affidavit, he missed six-weeks of work immediately after the accident, or six thousand dollars ($6000.00.) Subsequently, O'Donnell returned to eTail Closeouts for two months, but was terminated because of his inability to perform his duties due to the head injury. From this job, he was next hired by Buy-eTail making the same salary, but he had his hours reduced and was ultimately fired after two years because of his inability to perform his tasks and his inability to appropriately interact with customers and co-workers. Thereafter, he was unemployed for seven (7) months, then did odd jobs for five (5) months, and then became re-employed with Exporttek making approximately three thousand ($3000.00) per

month. Thus, the total approximate lost wages after taxes is $66,000.00. *See* Exhibit F, Unsworn Declaration of David O'Donnell.

### E. O'Donnell's Past Pain, Suffering and Mental Anguish

Plaintiff also seeks $1,672.789.74 in pain and suffering and lifelong emotional upheaval from his injuries as a result of this wreck—his ongoing headaches, his paranoia, his forgetfulness, his personality change, his tendency to cry and become confused, his irritability and sharp mood swings, his loss of friendships and family relationships, his difficulties relating to clients and co-workers, and his inability to enjoy the same marital relations as before the wreck. *See* Affidavits of David O'Donnell and Tisa Eubank, Exhibits D and E.

Accordingly, Plaintiff asks this Court to award damages as follows, based on the pleading and proof presented:

| | |
|---|---:|
| Past Reasonable and Necessary Medical Charges | $65,924.60 |
| Present Value of Future Reasonable and Necessary Medical Charges | $264,747.39 |
| Past Lost Wages | $66,000.00 |
| Pain, Suffering and Mental Anguish | $1,603,328.10 |
| **TOTAL** | **$2,000,000.00** |

### Conclusion and Prayer

Plaintiff's earlier motion for default judgment may have been premature, but now that Defendant Zavala has been served according to the magistrate judge's order and Zavala has failed to answer, the time is ripe for this Court to consider Plaintiff's damages, both past and ongoing, and grant a default judgment. Accordingly, Plaintiff re-urges his motion for default judgment and asks this Court for default judgment against Zavala pursuant to FED. R. CIV. P. 55(b)(2) and for this Court's judgment to award damages to Plaintiff in the amount of $2,000,000.00. Plaintiff also asks for all such other and further relief to which he may be entitled.

Respectfully submitted,

*/s/ Jay C. English*
J. Scott Perry
State Bar No. 15802500
sperry@englishpllc.com
Jay C. English
State Bar No. 06625290
jenglish@englishpllc.com
English Law Group, P.L.L.C.
12222 Merit Drive, Suite 1200
Dallas, TX 75251

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent to all counsel of record on August 22, 2019, via electronic filing.

*/s/ J. Scott Perry*